UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
KEVIN B. LOVE,

       Plaintiff,

  -against-             MEMORANDUM & ORDER

BMW FINANCIAL SERVICES NA, LLC,    15-CV-124 (SMG)

       Defendant.
------------------------------------------------------------------- x
GOLD, STEVEN M., U.S.M.J.:

## INTRODUCTION

  Plaintiff in this action asserts a violation of the Fair Credit Reporting Act and several common law claims. Plaintiff's claims arise from a motor vehicle lease agreement and, in particular, defendant's contention that plaintiff failed to make certain payments required under the lease. The lease agreement includes an arbitration clause. Defendant BMW Financial Services has moved to compel arbitration and plaintiff has cross-moved for sanctions.[1] The parties have consented to assignment of the case to the undersigned magistrate judge for all purposes. Docket Entry 11. For the reasons stated below, defendant's motion to compel arbitration is granted and plaintiff's cross-motion for sanctions is denied.

## FACTS

  On January 27, 2010, plaintiff Kevin B. Love entered into a lease agreement for a 2010 BMW 750 (the "car") with Open Road BMW of Edison, New Jersey. Stipulation of Uncontested Facts ("Stip.") ¶ 1, Docket Entry 21. Open Road assigned its rights under the lease agreement to defendant BMW Financial Services ("BMW FS"). Stip. ¶ 3. In his complaint,

---

[1] Defendant's motion and supporting papers are filed as Docket Entries 14 and 15. Plaintiff's opposition and cross-motion are filed as Docket Entries 16 and 17. Defendant's reply papers are filed as Docket Entries 20-22.

plaintiff contends that the car had a number of mechanical problems and required substantial repairs. The issues with the car were so severe that it remained in a repair facility from March of 2012 until early 2013. Stip. ¶¶ 7-8.

The lease agreement required plaintiff to make thirty-six payments of $1,418.24 by the 27th day of each month. Stip. Ex. A. Despite the car's mechanical problems, plaintiff paid most of the amounts due under the lease. However, according to defendant, many of the payments were made late, causing plaintiff to incur additional charges. Def. Reply at 2, Docket Entry 20. As a result, BMW FS declared plaintiff to be in default on his lease, repossessed the car, sold it and claimed that a deficiency balance was due and owing. Compl. ¶¶ 37-41. Plaintiff's Fair Credit Reporting Act claim arises from defendant's negative reports about him to credit reporting agencies. Compl. ¶¶ 46-55. Plaintiff's common law claims arise generally from the same underlying facts and circumstances.

As noted above, the lease agreement includes an arbitration clause. The arbitration clause provides in relevant part as follows:

> PLEASE REVIEW - IMPORTANT - AFFECTS MY LEGAL RIGHTS
>
> NOTICE: Either you or I may choose to have any dispute between us decided by arbitration and not in a court or by jury trial . . . .
>
> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this clause, and the arbitrability of the claim or dispute), between me and you or your employees, agents, successors or assigns, which arise out of or relate to my credit application, lease, purchase or condition of this Vehicle, this Lease or any resulting transaction or relationship (including any such relationship with third-parties who do not sign this Lease) shall, at your or my election, be resolved by neutral, binding arbitration and not by a court action . . . .
>
> Any arbitration under this Arbitration Clause shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law

> concerning arbitration; however, the governing law as to the substantive issues of the Lease and Vehicle shall be the law of the state in which this Lease was executed.

Stip. Ex. A, Lease Agreement ¶ 41, Docket Entry 21-1.

## DISCUSSION

*A. The Federal Arbitration Act*

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., provides that arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 2 of the FAA reflects "both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotations and citations omitted). The Supreme Court has held that the FAA requires courts to "'rigorously enforce' arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, ___ U.S. ___, ___, 133 S. Ct. 2304, 2309 (2013) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). Thus, courts have repeatedly held that "[a] party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000)).

The scope of the arbitration provision in the lease agreement at issue here is broad, and covers "[a]ny claim or dispute . . . aris[ing] out of or relat[ing] to [plaintiff's] credit application, lease, purchase or condition of this Vehicle." Lease Agreement ¶ 41. Moreover, the lease agreement clearly provides that either BMW FS or plaintiff may elect to have any covered dispute between them determined in arbitration as opposed to a court of law. Plaintiff

nevertheless contends for various reasons that the clause should not be enforced and that defendant's motion to compel arbitration should be denied. Each of plaintiff's contentions is addressed below.

B. *Unconscionability*

Plaintiff first contends that the arbitration clause in the lease agreement should not be enforced because it is unconscionable. As indicated in the excerpt quoted above, the lease agreement states that it is governed by the law of the state in which it is signed. Lease Agreement ¶ 41. The lease was signed in New Jersey. Luthmann Affirm. ¶ 30, Docket Entry 18. Accordingly, New Jersey law applies here.

The Second Circuit has held that, "for an agreement to be unconscionable under New Jersey law, it must include an exchange of obligations so one-sided as to shock the court's conscience." *Harrington*, 602 F.3d at 125 (internal quotation marks and citations omitted). Plaintiff's challenge to the validity of the arbitration clause on grounds of unconscionability does not rise to this level. Plaintiff's argument appears to be that the lease agreement is confusing because it identifies plaintiff, the lessee, as "I" or "we" and the car dealer, the lessor, as "you," whereas a separate document—a privacy notice provided to plaintiff by the dealer—refers to the dealer as "we, our or us" and plaintiff as "you." *Compare* Lease Agreement ¶ 2 *with* Privacy Notice, Docket Entry 18-3. Because these are separate documents, little if any genuine confusion was caused by referring to plaintiff as "I" in one and "you" in the other. Moreover, as indicated above, the arbitration agreement provides that "[e]ither you or I may choose to have any dispute between us decided by arbitration." Lease Agreement ¶ 41. Thus, any confusion that may have been caused by using "I" and "you" differently in separate documents was immaterial; the arbitration clause makes it clear that either party to the lease agreement may

4

invoke it. Finally, "misleading language in an agreement is relevant to procedural, and not substantive, unconscionability," and "[p]rocedural unconscionability typically does not, by itself, render an arbitration agreement unenforceable." *Harrington*, 602 F.3d at 125 (internal quotation marks, brackets, and citations omitted).

*C. Adhesion*

Plaintiff next suggests that the lease agreement is a contract of adhesion and therefore "necessarily involve[s] indicia of procedural unconscionability." Pl. Mem. at 9. As noted above, though, procedural unconscionability, even if demonstrated, is insufficient by itself to invalidate an agreement to arbitrate.

In any event, the lease agreement at issue here is not unenforceable as a contract of adhesion. Under New Jersey law, "the essential nature of a contract of adhesion is that it is presented on a take-it-or-leave-it basis, commonly in a standardized printed form, without opportunity for the 'adhering' party to negotiate except perhaps on a few particulars." *Rudbart v. North Jersey Dist. Water Supply Comm'n.*, 127 N.J. 344, 353 (1992). Assuming that the lease agreement was presented to plaintiff on a take-it-or-leave it basis on a pre-printed form and without the opportunity to negotiate its terms, it does not necessarily follow that its provisions are unenforceable. Rather, before concluding that an agreement is an unenforceable contract of adhesion, courts consider not only the take-it-or-leave-it aspect of the contract, but also the contract's subject matter, the relative bargaining positions of the parties, the degree of economic compulsion involved, and the public interests at stake. *Id.* at 356.

As plaintiff points out, many people need to use a car. A luxury car like the one involved here, though, is not a consumer necessity. Moreover, there are many competing suppliers of automobiles, and plaintiff might have selected another dealer if he was unhappy with the terms

5

offered to him by Open Road. Thus, plaintiff was not subject to any economic compulsion. *See id.* at 356 (pointing out that investors were not under economic pressure to buy notes, and had the opportunity to choose other equity and debt investments); *see also Allianz Ins. Co. v. Cavagnuolo,* 2004 WL 1048243, at *4 (S.D.N.Y. May 7, 2004) (expressing skepticism that an agreement to lease a Mercedes Benz could constitute an unenforceable contract of adhesion under New Jersey law because, as here, lessees could have leased or purchased a different vehicle). Nor are there significant public interests at stake in this case. The terms of the lease agreement do not, for example, invalidate any legislatively guaranteed rights or otherwise contravene New Jersey's public policy. *See Cavagnuolo*, 2004 WL 1048243, at *4 (finding no significant public interest involved in automobile lease terms); *Rudbart*, 127 N.J. at 355-56 (discussing public policy interests compromised by contract that required eviction upon termination of employment). When these additional considerations are taken into account, it becomes clear that the lease agreement is not unenforceable as a contract of adhesion.

*D. Waiver and Estoppel*

In addition to this action, plaintiff brought a separate lawsuit against Open Road, BMW of North America, and BMW of Morristown in the Supreme Court of the State of New York for Richmond County. The lawsuit was discontinued without prejudice. Luthmann Affirm. Ex. E, Docket Entry 18-5. Plaintiff did not name BMW FS as a defendant in that action. Nevertheless, plaintiff contends that BMW FS waived its right to arbitrate and should be estopped from seeking arbitration now because the defendants that appeared in the Richmond County action did not move to compel arbitration.

The lease agreement was assigned to BMW FS coincident with its execution. Lease Agreement ¶¶ 2, 20. Thus, to the extent plaintiff suggests that BMW FS was assigned the lease

6

after Open Road consented to litigate in court, he is mistaken. Plaintiff's reliance on *Babitt v. Frum*, 606 F. Supp. 680 (S.D.N.Y. 1985), is similarly unavailing. While the Court in that case did state that participation in a court action may be sufficient to waive a right to arbitrate, 606 F.Supp. at 682, its decision in no way suggested that an assignee is bound by an assignor's decision, made subsequent to assignment, to participate in a court action rather than invoke an arbitration clause.

Equitable estoppel is established under New Jersey law when (1) an opposing party engaged in conduct that induced reliance, and (2) the party invoking estoppel acted or changed his position to his detriment. *Knorr v. Smeal*, 178 N.J. 169, 178 (2003). Here, plaintiff elected not to name BMW FS in his lawsuit against Open Road and the other BMW entities. Thus, BMW FS did not, and could not, take any action in that lawsuit, much less an action that constituted a waiver of its right to arbitrate. Moreover, plaintiff has not identified any manner in which he acted or changed position to his detriment with respect to pursuing his claims against BMW FS as a result of Open Road's decision to proceed in court rather than invoke its right to arbitrate. Accordingly, plaintiff's waiver and estoppel arguments are without merit.

E. Attorney's Fees

Defendant asks that this Court award to it the legal fees and costs it incurred as a result of bringing this motion to compel arbitration. Defendant invokes Paragraph 26 of the lease agreement, which provides that BMW FS may recover its attorney's fees and costs. Def. Mem. at 6-7, Docket Entry 15. Because defendant's claim for attorney's fees and costs arises from the lease agreement, and because the arbitration clause in the lease agreement has been invoked by defendant and applies to all claims and disputes arising under that agreement—including disputes over arbitrability—defendant must seek its fees and costs in arbitration and not here.

*F. Stay of Proceedings*

Defendant originally sought to have this lawsuit stayed or dismissed. Def. Mem. at 9, Docket Entry 15. However, as defendant pointed out in a subsequently submitted letter, the Second Circuit has held that district courts must stay a case and not dismiss it when all of the claims in the action have been referred to arbitration. *Katz v. Cellco Patnership*, 794 F.3d 341, 347 (2d Cir. 2015), *cert denied* ___ U.S. ___, 136 S.Ct. 596 (2015). This case will therefore be stayed pending the resolution of any ensuing arbitration proceedings.

*G. Plaintiff's Cross-Motion*

Plaintiff cross-moves for fees and costs pursuant to 28 U.S.C. § 1927. Luthmann Affirm. ¶ 46. Section 1927 authorizes a fee award when a party "multiplies the proceedings in any case unreasonably and vexatiously." Plaintiff has failed to establish any unreasonable or vexatious conduct by defendant. Accordingly, plaintiff's cross-motion is denied.

## CONCLUSION

For the forgoing reasons, defendant's motion to compel arbitration is granted. Defendant's application for fees and costs is referred to arbitration as well. Plaintiff's cross-motion for sanctions is denied. This action is stayed pending the outcome of the arbitration proceedings. Counsel for defendant shall submit a letter reporting on the status of the arbitration proceedings once they have been concluded or by June 1, 2016, whichever shall first occur.

SO ORDERED.

/s/
STEVEN M. GOLD
United States Magistrate Judge

Brooklyn, New York
January 21, 2016

U:\KJ 2014-15\Love v. BMW 15-CV-124\Compel Arbitration Final.docx